System Evergreen, et al. v. Concrete  CV-94-484-M   09/30/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


System Evergreen, A.G
and Michie Corporation,
     Plaintiffs

v.                                        Civil No. 94-484-M

Concrete Systems, Inc.,
Cleco Corporation, and
Methuen Construction, Co., Inc.,
     Defendants


**O R D E R**

System Evergreen, A.G. and Michie Corporation bring this patent infringement action against Concrete Systems, Inc., Cleco Corporation, and Methuen Construction Co., seeking damages and a permanent injunction, enjoining defendants from infringing U.S. Patent No. 4,293,245 (the "'245 patent").  Pending before the court are: (1) plaintiffs' motion for partial summary judgment regarding infringement of claim 18 and defendants' affirmative defenses; (2) defendants' cross motion for partial summary judgment on the issue of noninfringement of claim 18; (3) defendants' motion for partial summary judgment regarding the invalidity of claim 3; and (4) defendants' motion to strike portions of plaintiffs' motion for partial summary judgment.


**Background**

System Evergreen is the assignee of the `245 patent, which was issued on October 6, 1981, to Felix Jaecklin.  The `245 patent originally contained 27 claims (one independent and 26

dependent), describing an earth-filled structural system, composed of stackable concrete units which can be used as a retaining wall or free-standing sound barrier.[1] That structure is also designed to support the growth of vegetation, thereby making it not only functional, but aesthetically pleasing as well. Co-plaintiff, Michie Corporation, manufactures and sells precast concrete products. Michie holds an exclusive license under the `245 patent in New Hampshire. Plaintiffs allege that defendants willfully infringed the `245 patent by manufacturing, selling, and using an allegedly infringing product – the Eco-Wal.

Defendant, Concrete Systems, manufactures and sells the Eco-Wal — an earth filled, concrete retaining wall system. Cleco Corporation, manufactures and sells molds used to manufacture precast concrete forms that are incorporated in the Eco-Wal. The remaining defendant, Methuen Construction, purchased at least one Eco-Wal system and then, in turn, sold it to the State of New Hampshire.

According to defendants, the Eco-Wal was designed as a retaining wall product with superior means by which to support the growth of vegetation. They contend that "[b]y including planting troughs on the Eco-Wal, excellent vegetation growth can be accomplished since the planting troughs, much like window

---

[1] Following a patent reexamination in 1997, the Patent and Trademark Office rejected 15 of the '245 patent's original claims, including the only independent claim - claim 1.

boxes on a house, are filled with premium soil or loam and provide a water retention capability." Defendants' memorandum (document no. 109) at 3. Defendants claim that this design is "in stark contrast" to the Evergreen Wall, which is typically filled exclusively with inexpensive structural fill material (less hospitable to plant life than loam or premium soil) and which, by design, facilitates the drainage of water away from any planting material and downward through the center of the wall. Id. Defendants deny infringement and also argue that the `245 patent is invalid and unenforceable.

At the parties' request, the court held a patent claim construction hearing. At the hearing, each party set forth, through argument and submissions, their respective views as to the proper construction of the claims of the `245 patent. Following the hearing, the court issued its order construing claim 1 (the sole independent claim) of the `245 patent, which describes a structural system comprised of three elements: (1) a framework; (2) holes extending at least partly vertically through the framework; and (3) distance elements. See System Evergreen v. Concrete Systems, Inc., No. 94-484-M, slip op. (D.N.H. November 13, 1996). The court construed the `245 patent as follows:

> A. As a matter of law, the term "support area" is construed to mean the loading area for a joint between two frame elements positioned or stacked one upon the other. The term "substantially flat support for said earth material" is construed to mean the upper surface

3

of that portion of the longitudinal beam which is arranged at an acute angle with respect to the main plane or slab, and the area within the framework on which some of the earth material that fills the framework rests.

B.   As a matter of law, the term "main plane of the frame or slab" means the plane extending outward approximately from the bottom surface of the bottom region of the longitudinal beam, or any plane parallel to such a plane that contains one or more frame elements.  The term "acute angle" means the angle between at least one portion of the longitudinal beam and the "main plane of the frame or slab" as defined above.

C.   As a matter of law, the distance elements are a positively stated structural element of the system. The terms "holes" and "openings" are interchangeable, and refer to the same limitation.  The holes/openings extend vertically into the framework and function to receive earth material.  The holes/openings do not extend into the distance elements and they do not receive reinforcing materials to provide resistance against sliding due to horizontal forces.

Id., at 29-30.


Approximately one week after the court issued its order, defendants filed a Request for Reexamination of the '245 Patent. The PTO granted defendants' request and, on May 2, 1997, issued an Office Action in Reexamination, which rejected claims 1, 2, 4, 5, 9-13, 15, 20, 21, and 25-27 and confirmed the patentability of claims 3, 6-8, 14, 16-19, and 22-24.


## Discussion

Plaintiffs assert that they are entitled to judgment as a matter of law as to their claim that defendants infringed claim 18 of the '245 patent (which is dependent upon claims 1 and 12 of

4

the '245 patent).  They also assert that they are entitled to judgment as a matter of law with regard to their claim that defendants' infringement was willful.  Finally, they assert that they are entitled to judgment as a matter of law with regard to defendants' affirmative defenses (e.g., patent invalidity, unenforceability, misuse, and unfair competition).

Defendants, on the other hand, assert that they have not infringed claim 18 of the '245 patent and move for summary judgment as to that aspect of plaintiff's complaint.  At a minimum, they say that there remains a genuine issue of material fact concerning whether the Eco-Wal contains each and every limitation articulated in claim 18.  They also claim that plaintiffs have failed to establish that defendants' alleged infringement was willful.  Finally, defendants assert that they are entitled to summary judgment regarding the invalidity of claim 3.

I.   Cross-motions Regarding Infringement of Claim 18.

     A.   Standard of Review.

     As in other civil actions, a court may grant summary judgment in a patent infringement suit if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

5

56(c). See also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1573 (Fed. Cir. 1985). The Federal Circuit has repeatedly upheld the grant of summary judgment in patent infringement cases where there was no genuine issue of material fact. See, e.g., George v. Honda Motor Co. Ltd., 802 F.2d 432, 434 (Fed. Cir. 1986); Porter v. Farmers Supply Serv., Inc., 790 F.2d 882, 884 (Fed. Cir. 1986). In particular, the Federal Circuit has advised: "[w]here no issue of material fact is present . . . courts should not hesitate to avoid an unnecessary trial by proceeding under Fed. R. Civ. P. 56 without regard to the particular type of suit involved." Chore-Time Equip., Inc. v. Cumberland Corp., 713 F.2d 774, 778-79 (Fed. Cir. 1983).

Summary judgment in favor of a party accused of patent infringement is appropriate where no genuine issue of material fact is present and a finding of infringement is not possible. See Porter, 790 F.2d at 884. Accordingly, "where the claims do not read on the accused structure to establish literal infringement and a prosecution history estoppel makes clear that no actual infringement under the doctrine of equivalents can be found," summary judgment for the alleged infringer should be granted. Townsend Engr'g Co. v. Hitec CO., Ltd., 829 F.2d 1086, 1089 (Fed. Cir. 1987).

6

In determining whether a party has literally infringed a patent, the court must (1) interpret the claims to determine their scope and meaning, and then (2) determine whether "each limitation of the properly construed claims is found in the accused product or process." Hormone Research Foundation, Inc. v. Genentech, Inc., 904 F.2d 1558, 1562 (Fed. Cir. 1990). If an accused product lacks even a single claim limitation, there is no infringement as a matter of law. See Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1579 (Fed. Cir. 1993).

Claim construction is a matter of law, to be resolved by the court. See Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). Comparison of the accused device to the claims of the patent to determine infringement is a question of fact. Id. However, where the parties do not dispute the relevant facts concerning the construction of the accused device, "the question of literal infringement collapses to one of claim construction and is thus, amenable to summary judgment." Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996).

B.    Applicable Legal Standards for Construing Claims.

"[T]he construction of a patent, including terms of art within its claims, is exclusively within the province of the court." Markman, 517 U.S. at 372. In performing this task, the court considers the claims, specification, and the prosecution

7

history of the patent before the Patent and Trademark Office. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996); Markman v. Westview Instruments, Inc., 52 F.3d 967, 979-80 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

The court first looks to the claims themselves, see Vitronics, 90 F.3d at 1582, keeping in mind that all limitations in a claim must be considered meaningful. See Lantech, Inc. v. Keip Mach. Co., 32 F.3d 542, 546 (Fed. Cir 1994). Words in a claim are generally given their ordinary and customary meaning, unless it is apparent that the patentee clearly intended a different meaning. See Vitronics, 90 F.3d at 1582. Accordingly, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." Id. The court may also consider the prosecution history of the patent, which contains the complete record of all the proceedings before the Patent and Trademark Office. See id.

Together, the claims, the specification, and the file history make up the intrinsic evidence of the record. Where the intrinsic evidence of the record unambiguously describes the scope of the patented invention, the claim construction process is at an end. See id. at 1583. In such circumstances, reliance upon any extrinsic evidence to resolve the meaning of the disputed claim is improper. See id.

C.    The Legal Construction of Claim 18.

Among other things, plaintiffs assert that the Eco-Wal infringes claim 18 of the '245 patent.  As noted above, claim 18 is dependent upon claims 1 and 12.  Those claims provide as follows:

1.    A structural system for the construction of walls comprising a framework consisting of solid frame elements and being filled with earth material, said frame elements extending in at least one plain and having at least one support area on at least one side, said frame elements further including at least one longitudinal beam having a cross-section with at least one portion thereof arranged at an acute angle against the main plane of the frame or slab, the upper surface thereof forming a substantially flat support for said earth material, at least one such longitudinal beam being located at the front side of said wall and having an upper front edge portion being positioned at a greater height compared with said flat support and forming a board for retaining a portion of said earth material resting on said flat support, the system further including holes extending at least partly vertically through said framework and distance elements between at least two of said frame or slab elements which are positioned one above the other such that the earth material at least partially filling said vertically extending openings forms at least one sloped surface extending at least partly through the scope between said frame or slab elements positioned one above the other.

*  *  *

12.   The system of claim 1 wherein at least one longitudinal beam of said frame or slab element has a cantilevering cross section and downward sloping outer surfaces.

*  *  *

18.   The system of claim 12 further including a longitudinal canal in at least one longitudinal beam and including openings to the top or to the side.

9

As the court has previously noted, "in patent practice, a dependent claim recites narrower subject matter than its parent claim by either (1) adding an additional element(s), or (2) defining one or more elements of the parent claim more narrowly." System Evergreen v. Concrete Systems, Inc., No. 94-484-M, slip op. at 17 (D.N.H. November 13, 1996); see also, London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1539 (Fed. Cir. 1991); Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1552 (Fed. Cir. 1989). Accordingly, as a matter of law, claim 18 must be construed to incorporate the claim limitations of both claim 1 and claim 12. See 35 U.S.C. § 112, ¶ 4.

The court previously construed claim 1 of the '245 patent. See System Evergreen v. Concrete Systems, Inc., No. 94-484-M, slip op. (D.N.H. November 13, 1996). Claim 12 further limits claim 1 by requiring that "at least one longitudinal beam of said frame or slab element has a cantilevering cross section and downward sloping outer surfaces." Accordingly, before a determination of infringement can be rendered, the scope of the "cantilevering cross section" and "downward sloping outer surface" limitations must be ascertained.[2]

---

[2]    Because the proper interpretation of the "downward sloping outer surface" limitation necessarily disposes of this issue, the court need not undertake a construction of the "cantilevering cross section" limitation.

10

In the instant case, plaintiffs contend that the "downward sloping outer surface" limitation must be construed to mean that the longitudinal beam has an "exterior surface" which is "slanted" and "extends downwardly." Plaintiffs direct the court's attention to the dictionary definition of the term "slope," which provides that a slope is any upward or downward slant or inclination. The court accepts plaintiffs' construction of the terms "sloping" and "outer surface" because those terms are clear and unambiguous and, therefore, should be accorded their ordinary and customary meanings. See Vitronics, 90 F.3d at 1582. Moreover, defendants do not dispute the respective definitions of those terms.

However, plaintiffs' overall construction of this claim limitation is inadequate as it fails to properly address the primary issue in this case, specifically, the interpretation of the term "downward." According to defendants, the direction in which the outer surface slopes (i.e., toward the structural system or away from it as one traverses the surface in an outward direction) is of vital importance:

> [T]he downward sloping outer surface limitation can only mean an outer surface that slopes from a higher point to a lower point as the surface is traversed in an outward direction from the center of the wall to its periphery. An outer surface that slopes from a lower point to higher point as the surface is traversed in an outward direction . . . is not downward.

Defendants' memorandum (document no. 109) at 12. The court acknowledges the importance of the direction in which the outer surface slopes, and therefore, rejects as incomplete plaintiffs' construction of the term "downward" (which plaintiffs say means nothing more than that the surface "extends downwardly").

Because the words used in the claims, both asserted and non-asserted, define the scope of the patented invention, see Vitronics, 90 F.3d at 1582, a review of the construction of claim 1 seems in order. As previously shown, the plain language of claim 1 establishes that the cross section of the longitudinal beam is positioned at an acute angle with respect to the main plane. Because the longitudinal beam lies at an angle, simple geometry dictates that the beam will have a sloping surface. The degree of the slope of the longitudinal beam will naturally depend upon the degree of the angle between the main plane and the longitudinal beam.[3]

Claim 1 of the '245 patent also recites a "flat support" as a required element. The court has previously construed the term "flat support" to mean "the upper surface[4] of that portion of the

---

[3] A longitudinal beam positioned at an acute angle of substantially zero (as recited in original claim 2 of the '245 patent) will necessarily have a slope of approximately zero, and thus, will constitute nearly a straight line.

[4] Throughout the specification of the '245 patent, the patentee used the terms "upper surface" and "inner surface" interchangeably.

longitudinal beam which is arranged at an acute angle with respect to the main plane or slab, and the area within the framework on which some of the earth material that fills the framework rests." System Evergreen v. Concrete Systems, Inc., No. 94-484-M, slip op. at 29-30 (D.N.H. November 13, 1996).

Given this construction of claim 1 and the plain language of claim 12, neither party disputes that the "outer surface" of the longitudinal beam is simply that side of the beam which forms the visible portion of the wall or the framework. In other words, the outer surface of the beam is that side of the beam upon which no earth material rests. Because the proper construction of this element is apparent from the plain language of the claims, a review of the specification is not necessary.

The proper construction of the "downward sloping" limitation, as recited in claim 12, however, cannot be so readily discerned from the plain language of the claim. Because the "acute angle" limitation in claim 1 causes the inner surface of the longitudinal beam to slope, the specification must be reviewed to determine whether the patentee sought, through the addition of claim 12, to distinguish the direction of the beam's outer slope from that of its inner slope. Upon review of the specification, the court concludes that the patentee did intend to distinguish between the slopes of those two surfaces.

13

According to the specification of the '245 patent, the structural system as depicted in FIGURE 3 shows a preferred embodiment of claim 1 using "sloping surfaces" of the beam. See '245 patent, col. 3, lns. 36-40. These sloping surfaces of the longitudinal beam help to better maintain the position of the earth material that fills the framework at the outer edges of the system. Id. In addition, the shape of the particular embodiment depicted in FIGURE 5 "shows a similar effect at the inner portion of the longitudinal beams with respect to the fill earth material because of the sloping inner surface." (col. 3, lns. 45-48). Clearly, the sloping surfaces as depicted in these figures are a result of the "acute angle" limitation in claim 1, and are designed to better house the earth material that fills the framework.

FIGURES 1, 2, and 3 suggest that it is possible (in some embodiments of the patent) for the outer surfaces of the longitudinal beams to have slopes which are identical to those of the inner surfaces of the beams. See, e.g., FIGURE 3, reference no. 18.[5] However, the additional restriction that the slope of the outer surface be "downward" necessarily precludes this interpretation as to claim 12. Interpreting the slope of the outer surface of the longitudinal beam as being identical to the

_____

[5] The Federal Circuit has indicated that reference numbers of the figures of the patent specification can be used for guidance during claim construction. See, e.g., Strattec Sec. Corp. v. General Automotive Specialty Co., Inc., 126 F.3d 1411, 1416-17 (Fed. Cir. 1997).

14

slope of the inner surface of the beam would have the effect of rendering this limitation in claim 12 meaningless. Because all limitations in a claim must be considered meaningful, such a construction is legally inappropriate. See Lantech, Inc. v. Keip Mach. Co., 32 F.3d 542, 546 (Fed. Cir 1994).

Looking at the reference numbers of FIGURE 5 of the specification, the patentee clearly intended to distinguish between "the sloping inner surface 23" ('245 patent, col. 3, ln. 48) and the "special slope of [outer] surface 21" ('245 patent, col. 3, lns. 49-50). As noted above, the sloping inner surface of the beam results from the longitudinal beam being positioned at an acute angle with respect to the main plane, and it is designed to better house the earth material that fills the framework. In comparison, the "special slope of [outer] surface 23" was designed to prevent individuals from climbing up the sides of the wall. According to the specification, "[t]he special slope of surface 21 [i.e., the outer surface] . . . result[s] in the virtual impossibility to claim [sic] up the wall." ('245 patent, col. 3, lns. 49-52).

Although the court is aware that it ought not read limitations appearing in the specification into the claims, "claims are not interpreted in a vacuum, but are part of and are read in light of the specification." Slimfold Mfg. Co. v. Kinkhead Indus., Inc., 810 F.2d 1113, 1116 (Fed. Cir. 1987). In

15

this case, the specification clearly distinguishes between the sloping inner surfaces and the "downward" sloping outer surfaces of the longitudinal beams. Moreover, the specification makes it clear that the downward slope of the beam's outer surface is not a result of the "acute angle" limitation as recited in claim 1. Instead, it is a result of the patentee's intent to augment the invention described in claim 1 so as to prevent individuals from climbing upon the earth-filled wall. Consequently, the outer surface and the inner surface of the longitudinal beam in claim 12 must slope in different directions. See, e.g., FIGURE 5, reference nos. 21 and 23.

In light of the foregoing, the court accepts defendants' proposed construction of claim 12 which requires an outer surface that slopes from a higher point to a lower point as the surface is traversed in an outward direction along the periphery from the center of the wall to the end of the wall.

D. Literal Infringement.

In light of the above construction, and the evidence regarding defendants' accused device, it is clear that the Eco-Wal does not literally infringe claim 18 of the '245 patent. The "All Elements Rule," consistently applied by the Federal Circuit, provides that when an element of a claim is missing in an accused product, there can be no infringement as a matter of law. See Hughes Aircraft v. United States, 140 F.3d 1470, 1477 (Fed. Cir.

16

1998). "Literal infringement requires that every limitation of the patent claim be found in the accused infringing device." General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997).

Although plaintiffs dispute the construction of defendants' device, no reasonable fact finder could literally find in defendants' accused device the downward sloping outer surface as required by claim 12 of the '245 patent. Upon inspection of defendants' Eco-Wal, it is clear that defendants' device slopes downward from a higher point to a lower point as the surface is traversed in an inward direction. Stated somewhat differently, if the Eco-Wal's surface is traversed in an outward direction along its periphery, the device slopes upward from a lower point to a higher point. Accordingly, defendants' device does not literally read upon the language of either claim 12 or 18 of the '245 patent and defendants are entitled to judgment as a matter of law on the issue of noninfringement of claim 18.[6]

    E.   Doctrine of Equivalents.

---

[6] Plaintiffs seem to suggest that the sloping element of defendants' device reads upon both the "acute angle" limitation recited in claim 1 and the "downward sloping outer surface" limitation of claim 12. However, this single element of defendants' accused device cannot simultaneously meet the requirements of both claim limitations. Clearly, the particular slope in the accused device is "upward" in nature, rather than "downward," and is intended to support and retain earth material. Thus, under the All Elements Rule, because defendants' device does not literally embody all of the limitations of claim 18, defendants' device does not infringe claim 18 of the '245 patent.

17

Defendants have also moved for summary judgment with respect to noninfringement of claim 18 under the doctrine of equivalents. Under the doctrine of equivalents, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product and the claimed elements of the patented invention. See Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 117 S. Ct. 1040, 1045 (1997). "An equivalent under the doctrine of equivalents results from an insubstantial change which, from the perspective of one of ordinary skill in the art, adds nothing of significance to the claimed invention." Valmont Indus., Inc. v. Reinke Mfg. Co., Inc., 983 F.2d 1039, 1043 (Fed. Cir. 1993).

Infringement under the doctrine of equivalents requires that an equivalent be found for every element of the claim "somewhere in [the] accused device." Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1259 (Fed. Cir. 1989). Although the question of equivalence is generally one of fact, where "the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." Warner-Jenkinson, 117 S. Ct. at 1053 n.8. In addition, under the All Elements Rule, "if the accused device wholly fails to meet a limitation to which the patentee has expressly limited the claims, a finding of

equivalence is precluded under prosecution history estoppel."
Hughes Aircraft, 140 F.3d at 1477.

In this case, defendants are entitled to summary judgment on the issue of noninfringement of claim 18 under the doctrine of equivalents because no reasonable fact finder could find the equivalent of the "downward sloping outer surface" in the accused device. Plaintiffs have failed to produce any evidence which would indicate the equivalence of the "downward sloping outer surface" limitation in defendants' Eco-Wal. Because all claim limitations are deemed material, the absence of a "downward sloping outer surface" in the accused product precludes a finding of equivalence under prosecution history estoppel. See id.

II. Plaintiffs' motion for summary judgment with regard to defendants' claims of unenforceability and patent misuse.

As to plaintiffs' assertion that they are entitled to summary judgment with regard to defendants' claims of unenforceability, misuse, and unfair competition, they merely say that:

> To date, the Defendants have yet to provide any evidence supporting their claims of unenforceability and misuse of the '245 patent, and unfair competition. It being Defendants' burden to establish these affirmative defenses and counterclaims, summary judgment should be awarded to the Plaintiffs on same.

Plaintiffs' memorandum (document no. 99) at 23. Such a claim requires little response. Plainly, more is required in order to

19

demonstrate entitlement to judgment as a matter of law.
Accordingly, plaintiffs' motion for summary judgment as to
defendants' affirmative defenses and counterclaims is denied.


III. Defendants' Motion for Partial Summary Judgment on Invalidity of Claim 3.

Defendants seek judgment as a matter of law with regard to their assertion that claim 3 of the '245 patent is invalid under 35 U.S.C. § 112 for failing to "enable" the invention and for failing to precisely claim the invention disclosed.  They also assert that the '245 patent is invalid for lack of novelty. Claim 3 of the '245 patent provides as follows:

> 3.    The system of claim 1 in which there is at least one longitudinal beam having an L-type cross-section with an upright L-portion extending upwards from said flat support portion and being positioned at the outer edge portion of the longitudinal beam, said upright L-portion being arranged at an angle relative to said main plane of the frame or slab so as to form a sloping front and/or internal surface of said board retaining the earth material, said sloping being chosen so as to form an overhang to the front side of the wall.

A.    Presumption of Validity.

The '245 patent is, by statute, presumed valid.  35 U.S.C. § 282.  This presumption is based on the PTO's particular expertise in interpreting language used in patent applications as well as its familiarity with the ordinary level of skill in the relevant art.  See Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 446-447 (Fed. Cir. 1986).  The Federal Circuit has interpreted this presumption to require the party asserting

20

invalidity to establish the invalidity of each claim by clear and convincing evidence. See Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1427 (Fed. Cir. 1988); Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 974 (Fed. Cir. 1986).

Although the court is not bound by the PTO's findings upholding the validity of a challenged patent in a reexamination proceeding, those findings affect the court's deliberations in two ways. First, the PTO's findings provide evidence that the court must consider in determining whether the challenger has overcome the statutory presumption of validity by clear and convincing evidence. See Fromson v. Advance Offset Plate, Inc., 755 F.2d 1549, 1555 (Fed. Cir. 1985). Second, where a patent in suit has been reissued or upheld after the PTO's consideration of prior art cited by a challenger, the challenger's "burden of proof of unpatentability has become more difficult to sustain – a fact . . . to be taken into account by the trial judge." American Hoist & Derrick Co. v. Sowa & Sons, 725 F.2d 1350, 1364 (Fed. Cir. 1984); see also, Fromson, 755 F.2d at 1555. The court therefore regards the PTO's reexamination findings of validity for claim 3 of the '245 patent as highly probative with respect to the prior art considered during reexamination. See Fromson, 755 F.2d at 1558. Consequently, the court views defendants' burden of proving invalidity in this case as heavier than it would have been in the absence of the reexamination.

21

Defendants contend that their burden of proving invalidity should not be enhanced as a result of the reexamination proceeding because the PTO did not adopt the court's previous construction of claim 1 during the proceeding. According to defendants:

> [S]ince the court must compare the accused product to the claims as construed, unless the PTO has construed the claims in the identical manner [as that of the court] during a reexamination proceeding, then the court can simply not accept that the claims should be accorded an enhanced presumption of validity simply by virtue of their having survived reexamination.

Defendants' memorandum (document no. 106) at 7. Although this argument may seem plausible on its face, the court must reject defendants' contention regarding their burden of proof.

The differences between the PTO reexamination and the present suit suggest that the PTO's findings should be given substantial deference. In contrast to civil litigation, where the patent enjoys a presumption of validity, no such presumption exists during a reexamination proceeding. See In re Etter, 756 F.2d 852, 856-57 (Fed. Cir. 1985). It is, therefore, highly significant that claim 3 of the '245 patent was upheld by the PTO against a higher standard than that which would be applied by the court.

Moreover, infringement actions and reexamination proceedings differ in their approach to claim construction in a way which

22

favors the patent owner during litigation. Specifically, in a reexamination proceeding, claims "will be given their broadest reasonable interpretation," which increases the likelihood of a finding of anticipation and therefore invalidity. Id. at 862. Conversely, claims in litigation are to be "so construed, if possible, as to sustain their validity." Id. Consequently, defendants contention that the PTO construed the claims at issue in a manner inconsistent with (i.e., broader than) the court's construction actually strengthens the patent's presumption of validity.

B.     Anticipation.

Defendants assert that claim 3 of the '245 patent is anticipated by U.S. Patent Nos. 4,190,384 and 4,244,655, issued to Herwig Neumann. A patent claim is anticipated only if each and every element of the claim is disclosed in a single prior art reference. See In re Spada, 911 F.2d 705, 708 (Fed. Cir. 1990).

In their request for reexamination of the '245 patent, defendants cited the above Neumann references as prior art to the examiner, and advanced essentially the same arguments regarding patentability as they are asserting now. During reexamination, however, the examiner rejected defendants' arguments and concluded that:

> [G]erman Patent No. 2420173, U.S. Patent No. 4,190,384
> to Neumann [and] U.S. Patent No. 4,244,665 to Neumann
> are not considered to raise a substantial new question

23

of patentability and therefore, are not considered to be pertinent to the reexamination.

Ordering Granting Request for Reexamination, p. 3.

According to the Federal Circuit: "When an attacker simply goes over the same ground traveled by the PTO, part of the burden is to show that the PTO was wrong in its decision to grant the patent." American Hoist, 725 F.2d at 1360. Because defendants have not identified sufficient evidence "that the PTO was wrong" in its decision to uphold claim 3, the court gives considerable deference to the PTO's findings during the reexamination of the '245 patent. Id. At a minimum, those findings raise a substantial issue of material fact making it inappropriate to grant defendants summary judgment on the issues of invalidity and unenforceability.

Moreover, aside from asserting that the Neumann patents "clearly anticipate claim 3 of the '245 patent," defendants' memorandum (document no. 106) at 16, and producing a claim chart which purports to compare the claims of the respective patents, defendants have failed to develop their argument with sufficient detail to allow the court to conclude that they are entitled to judgment as a matter of law.

C.    Enablement and Particularity.

24

Defendants also assert that claim 3 of the '245 patent is invalid under both the first paragraph of section 112 (the "enablement" requirement) and the second paragraph of section 112 (the "particularity" requirement). Section 112 provides, in pertinent part, that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.
>
> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112. The so-called "enablement" requirement contained in paragraph 1 of section 112 is satisfied if the patent teaches those skilled in the art how to make and use the claimed invention without undue experimentation. See In re Wright, 999 F.2d 1557, 1561 (Fed. Cir. 1993). Because a patent is directed at this hypothetical person, "a patent need not teach, and preferably omits, what is well known in the art." Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1384 (Fed. Cir. 1986).

The "particularity" requirement of paragraph 2 is met if the claims circumscribe a particular area with a reasonable degree of precision and particularity, in light of the teachings of prior

art, to one possessing the ordinary level of skills in the pertinent art.  See Application of Moore, 439 F.2d 1232, 1235 (C.C.P.A. 1971).  Accordingly, the test governing a "particularity" challenge is similar to the principle guiding claim construction and asks "whether one skilled in the art would understand the bounds of the claim when read in light of the specification.  If the claims read in light of the specification reasonably apprize those skilled in the art of the scope of the invention, § 112 demands no more."  Miles Laboratories, Inc. v. Shandon Inc., 997 F.2d 870, 875 (Fed. Cir. 1993) (citations omitted).

"Enablement" and "particularity" are, however, separate requirements.  The enablement requirement of paragraph 1 addresses the adequacy of the language of the specification, while the particularity requirement of paragraph 2 addresses to the adequacy of the claim language.  As the Court of Appeals for the Federal Circuit has observed:

> The second paragraph of § 112 deals with the claims only.  The first paragraph does not apply to claims but to "written description."  It requires that the inventor adequately disclose three separate items: (1) the invention itself (the "description" requirement); (2) the manner and process of making and using the invention (the "enablement" requirement); and (3) the best mode contemplated by the inventor, at the time of filing, in carrying out the invention (the "best mode" requirement).

Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985).  In summary, therefore, under paragraph one of

section 112, "in order to be enabling, a specification must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." PPG Industries, Inc. v. Guardian Industries Corp., 75 F.3d 1558, 1564 (Fed. Cir. 1996). Whereas, "[p]aragraph two of section 112 is essentially a requirement for precision and definiteness of claim language; the requirement is that the language of the claims must make it clear what subject matter they encompass." Id., at 1562 (citations and internal quotation marks omitted).

Here, neither party has attempted to describe the knowledge and qualifications of the hypothetical person who might properly be considered skilled in the relevant art. Nevertheless, they vigorously dispute whether claim 3 of the '245 patent adequately teaches the claimed invention, so that a person with such skill could build the wall described in that claim without undue experimentation. Specifically, defendants assert that claim 3 introduces a new angle, which represents the angle of orientation of the upright L-portion with respect to the main plane. They then argue that because

> it is unclear which angle the patentee has identified
> as the single "acute angle" recited in claim 1 of the
> '245 Patent and since earth-filled walls contain many
> elements and angles, even one skilled in the pertinent
> art would not be able to build a wall in accordance
> with the teachings of the '245 Patent without undue
> experimentation.

27

Defendants' memorandum (document no. 106) at 9. However, "the question of undue experimentation is a matter of degree. The fact that some experimentation is necessary does not preclude enablement; what is required is that the amount of experimentation must not be unduly extensive." PPG Industries, 75 F.3d at 1564. Based upon the present record (which, for example, does not contain any affidavits of experts skilled in the relevant art, opining as to whether or not "undue experimentation" would be required to construct the invention claimed in claim 3), the conflicting arguments offered by the parties, and the absence of any discussion concerning the requisite knowledge of one skilled in the pertinent art, the court cannot conclude that defendants have carried their burden of proof. In short, they have failed to demonstrate that one skilled in the relevant art would have to engage in undue experimentation in order to identify the angles recited in claim 3 and construct the invention claimed.

The parties also dispute whether claim 3 describes the invention with adequate specificity. Defendants again focus upon the angle of orientation of the upright L-portion with respect to the main plain. They assert that the public cannot determine precisely what is represented by that angle and, therefore, it cannot determine the specific limits of the claimed invention. Again, however, based upon the record as it presently stands, the court cannot conclude as a matter of law that defendants have

28

demonstrated that claim 3 fails to meet section 112's specificity requirement by failing to make clear what subject matter it encompasses.

## Conclusion

For the foregoing reasons, plaintiffs' motion for partial summary judgment regarding infringement of claim 18 (document no. 99) and defendants' motion for partial summary judgment regarding the invalidity of claim 3 (document no. 106) are denied. Defendants' cross motion for partial summary judgment on the issue of noninfringement of claim 18 (document no. 108) is granted. Defendants' partially assented-to motion to strike (document no. 112) is granted to the extent that the referenced portions of plaintiffs' submissions are stricken. It is, however, denied to the extent that defendants seek the imposition of sanctions and/or an award of fees.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

September 30, 1998

cc: Steven J. Grossman, Esq.
    Douglas N. Steere, Esq.
    Edmund J. Boutin, Esq.
    Daniel J. Bourque, Esq.