**LANTECH, INC., Plaintiff–Appellee,**

v.

**KEIP MACHINE COMPANY,
Defendant–Appellant.**

No. 93–1457.

United States Court of Appeals,
Federal Circuit.

Aug. 5, 1994.

Kenneth E. Payne, Atty., Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, argued for plaintiff-appellee. With him on the brief was Dennis P. O'Reilley; Martin I. Fuchs, Finnegan, Henderson, Farabow, Garrett & Dunner, of counsel. Also James R. Peterson and James S. Brady, of Miller, Johnson, Snell & Cummiskey, of Grand Rapids, MI, on the brief.

Douglas A. Dozeman, Atty., Warner, Norcross & Judd, Grand Rapids, MI, argued for defendant-appellant. With him were Charles E. Burpee and James Moskal, on the brief.

Before RICH, Circuit Judge, BENNETT, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

RICH, *Circuit Judge.*

Keip Machine Company (Keip) appeals the June 11, 1993, judgment of the United States District Court, Western District of Michigan, Civil Action No. 1:91–CV–721, granting Lantech, Inc.'s (Lantech) motion for summary judgment of infringement, and denying Keip's cross-motion for summary judgment of non-infringement. For the reasons discussed below, we reverse the judgment granting summary judgment of infringement, reverse-in-part the judgment denying Keip's cross-motion for summary judgment of non-infringement to the extent we find no literal infringement, and remand for further proceedings regarding infringement by application of the doctrine of equivalents which Lantech asserted but the district court did not reach.

Lantech sued Keip for infringement of U.S. Patent No. 4,317,322 (the '322 patent). Lantech and Keip filed cross-motions for summary judgment. The district court found that Keip's device literally infringed claims 1, 15, and 16 of the '322 patent. Only the issue of literal infringement is before us on appeal.[1]

I. *Background*

A. Technology

The '322 patent and Keip's allegedly infringing device relate to stretch wrapping machines that spirally wrap packaged products with a pre-stretched film which contracts around the products to protect and hold them together during shipment. The following schematic diagrams are offered as an aid to understanding their structure.

'322

Keip's device

B. Claimed Invention

An embodiment of the '322 patent, entitled "Rotatable Film Wrapping Apparatus with Wrap Carrying Mechanism," as shown in Fig. 2 below, includes an infeed conveyor 12 on the left and a take-off conveyor 20 on the

right. The load 24 to be wrapped passes from left to right through the wrapping station 41 which includes the film dispensing apparatus 16 and the conveyor assembly 14. The rotation of the film dispensing mechanism 16 with the film roll 56 wraps the load

1. Because the district court did not decide the issue of infringement by application of the doctrine of equivalents, that issue is not before us on appeal. *Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514, 519, 28 USPQ2d 1119, 1124 (Fed.Cir.1993); *See Cicena, Ltd. v. Columbia Telecommunications Group*, 900 F.2d 1546, 1552, 14 USPQ2d 1401, 1407 (Fed.Cir.1990).

24 as it advances. The conveyor assembly 14, at issue here, has two stacked endless belt conveyors 92 and 94, one above the other. The upper run 98 of conveyor 92 and the lower run 96 of conveyor 94 travel in the same direction at the same speed, carrying the wrapped load 22 to the take-off conveyor 20.

The reason for using two superposed conveyors is that the film gets wrapped around the conveyor as well as the load and has to be carried along with it, contracting against the bottom of the load as it leaves the conveyors due to its residual elasticity.

Fig 2.

## C. Claims

The dispute has been narrowed to the elements recited in claims 1, 15, and 16 that are directed to the conveying assembly, set forth below. (emphasis added). The numerals in brackets refer to elements circled in Fig. 2.

Claim 1 (in part)

... *said conveyor assembly [14] comprising at least two conveyor means* [92, 94] ... *one* of said conveyor means [92] being adapted to receive a load [24] from said infeed means [12] and transport said load [24] ... to contact and wrap the *other* conveyor means [94] with film [56] dispensed from said film dispensing means [16] enabling the wrapped load [22] on the *one* conveyor means [92] and the film web wrapped around the *other* conveyor means [94] to be carried linearly by *both* conveyor

means [14] at substantially the same speed

...

Claim 15 (in part)

... said *conveyor assembly [14] comprising two vertically positioned conveyors* [92, 94] ... drive means to drive said *conveyors* so that the upper portion [98] of *one* conveyor [92] travels in the same direction as the *lower* portion [96] of the other conveyor [94] with said *one* conveyor [92] supporting and linearly conveying said load [24] ... to rotate said film roll support member so that it continuously dispenses the material around the said conveyor assembly [14] and the load [24] being supported by the *one* conveyor [92] to contact and wrap the load [24] and said *other* conveyor [94] forming a spiral wrapped load [22]....

Claim 16 (in part)

... said *conveyor assembly [14] comprising at least two conveyors* [92, 94] positioned *adjacent to each other* in a stacked relationship and driven at substantially the same speed, *one* of said conveyors [92] of said conveyor assembly [14] being adapted to receive a load [24] from said conveyor means and transport said load [24] in a downstream direction through and away from said wrapping area, *another* of said conveyors [94] being adapted to receive and carry film web wrapped around it in said downstream direction, said wrapping means dispensing film from said film dispenser around said load [24] and the *lowest* conveyor [94] with the film web engaging and being carried by said *lowest* conveyor [94] at substantially the same speed as the load [24] is being carried by *the one conveyor* [92] of the conveyor assembly [14]. . . .

### D. Accused Device

Keip's allegedly infringing device is an embodiment of the device shown in U.S. Patent No. 4,979,358 ('358 patent). Fig. 3 thereof, a top view of the discharge end of the conveyor, and Fig. 9, a cross-sectional view taken on the line IX–IX of Fig. 3, are reproduced below.[2]

Fig. 3

Fig. 9

(some numbers redacted)

Keip's device has a single conveyor that includes two loops or conveyor halves 173 placed horizontally side by side. Each loop 173 comprises a single chain with a plurality of identical one-piece, U-shaped resilient plastic lugs 177. The outer sides of the lugs, referred to as outer arms 179 and 181, Fig. 9, are expanded as they are carried over longitudinal stationary cam plates 208 and 210 for the entire length of the conveyor along the outer or forward path 178, Fig. 3. When expanded, arms 179 and 181 of the loops 173 cooperate to carry the product and the film forward through and out of the wrapping area. As the resilient lugs reach the discharge end of the conveyor, arms 179 and 181 recoil. The lugs are in their recoiled position for the entire length of the conveyor along inner or return path 180 that does not have cam plates 208 and 210. When moving along the return path 180, Fig. 3, recoiled arms 179 and 181 do not interfere with the forward movement of the load and film. The recoil or collapse of the outer arms 179 and 181 occurs as the chains are rounding the ends 176 of the loops.

### II. *Analysis*

■ On appeal of a grant of summary judgment, we independently determine whether there are any genuine issues of material fact, and if not whether the court erred either in interpreting the governing law or in applying the law to the facts. *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673, 15 USPQ2d 1540, 1543 (Fed.Cir.1990). Reversal is proper if the court "engaged in a faulty legal analysis in applying the law to the facts and the correct application of the law to those facts might

**2.** The parties stipulated that the allegedly infringing machines sold by Keip were accurately depicted in Figs. 1–9 of the '358 patent.

bring a different result." *Litton Industrial Prod., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 164, 225 USPQ 34, 38 (Fed.Cir.1985). The district court is required to view the evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The issue before us is whether the district court properly granted summary judgment in finding that Keip's device literally infringes claims 1, 15, and 16 of the '322 patent. Determining whether the claims of a patent have been literally infringed is a two step process: first, the claims must be interpreted to determine their proper scope; thereafter, the claims as thus interpreted are applied to the accused device. *Palumbo v. Don–Joy Co.,* 762 F.2d 969, 974–75, 226 USPQ 5, 7 (Fed.Cir.1985).

### A. Claim Interpretation

■ Claim interpretation is a question of law amenable to summary judgment. Mere disagreement over the meaning of a term does not necessarily give rise to a genuine issue of material fact. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir.1992). To determine the intended meaning of a claim, we look to the claim language in context of the specification and the prosecution history. *C.R. Bard,* 911 F.2d at 673, 15 USPQ2d at 1543.

Keip argues that the district court's interpretation of the claim language was erroneous. We agree. The district court erred first by ignoring the "at least two" claim limitation, and second, by embracing an erroneous interpretation of the term "conveyor."

Before the district court, Keip argued that the conveyor assembly, as defined by the claims, is required to have the following elements:

1.  At least two conveyors[3] [means][4]
2.  One conveyor [means] that is adapted to receive the load and convey it across the gap; and

3.  One conveyor [means] that is adapted to contact the film and convey the film web across the gap.

The district court disagreed and concluded that Keip could not avoid literal infringement by reading in limitations that were not in the claims. The limitations, however, are in the claims. The district court's error can be traced to its reiteration of the claims just prior to its analysis wherein it omitted the "at least two" language from the claims. Based on the thus redacted claims, the district court stated: "[T]here is no word or phrase which requires the conveyor means or conveyors to be structurally independent of each other." No. 1:91:CV:721, slip op. at 12. That omission effectively read out the "at least two" limitation which is clearly stated in the claims.

All limitations in a claim must be considered meaningful. *See Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1532–33, 3 USPQ2d 1321, 1324–25 (Fed.Cir. 1987). Indeed, the language of the claims makes unambiguous reference to two distinct elements of the claimed structure: first by the "at least two conveyor [means]" language, and second by the "one of said conveyor [means]," "other conveyor means," "both conveyor means," and "lowest conveyor" language. It is clear that the claims define two separate conveyor structures; otherwise the recitation of the "at least two" limitation would be meaningless.

When claiming a combination where more than one of a certain element, here a conveyor [means], is included in the combination, the term "at least two" sets forth the minimum number of a particular element required. This interpretation gives full effect to the recitation of two distinct elements in the claimed structure. Therefore, properly interpreted, all claims at issue require two or more conveyor structures, not one. Accordingly, we interpret claims 1, 15, and 16 to require two separate conveyors.

Having properly put back into the claims the "at least two" limitation, we next inter-

---

**3.** Claims 15 and 16.

**4.** Claim 1 employs means-plus-function language.

pret the term "conveyor." "Terms in claims are to be given their ordinary and accustomed meaning, unless it appears that the inventor used them differently." *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984). The term conveyor is neither ambiguous nor highly technical. More importantly, there is nothing in the claims, the specification or prosecution history that would suggest a meaning other than its ordinary meaning.

The district court properly concluded that the ordinary meaning of conveyor was applicable and correctly set forth its meaning as "an apparatus that transports articles from one place to another."[5] Nevertheless, as discussed below, the district court subsequently embraced Lantech's erroneous "conveying or moving surface" definition.

The term conveyor, as used in the claims and described in the specification always refers to an operative device or structure which would ordinarily be considered a conveyor. A conveyor necessarily includes components such as belts, slider plates, and drives, in addition to a moving surface.

The claims require two or more conveyors or conveyor means and not two or more moving surfaces. There is nothing in the specification or prosecution history to suggest that a conveyor is defined as merely a moving surface. While a conveyor has a moving surface, a moving surface alone is not a conveyor.

The district court erred as a matter of law by effectively reading out a specific and clearly stated limitation, and embracing an erroneous interpretation of the term conveyor. Properly construed, the claims require at least two conveyors which are separate elements and not merely two moving surfaces.

### B. Literal Infringement

▇ Literal infringement is found where the accused device falls within the scope of the asserted claims as properly interpreted. *Palumbo*, 762 F.2d at 974, 226 USPQ at 7. For literal infringement, each limitation of the claim must be met by the accused device

exactly, any deviation from the claim precluding a finding of infringement. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577, 12 USPQ2d 1382, 1384 (Fed.Cir.1989).

Only one conveyor can be found in the Keip device. The conveyor that is contacted and wrapped by the film is the same conveyor that transports the product. In fact, before the court misinterpreted the claims, it correctly stated that the Keip device "utilizes *a single conveyor* consisting of two endless loops, or conveyor *halves,* placed horizontally side-by-side" (emphasis added), slip op. at 8. Neither the right nor the left conveyor loop of the Keip device is by itself a conveyor because neither half is capable of functioning as a conveyor. We therefore find that Keip's device does not literally infringe the asserted claims because it does not have *two* conveyors as required by each of the claims in suit.

Lantech argues that because the arms 179, 181 on the lugs constitute two discrete moving or conveying surfaces, these surfaces are equal to two conveyors. This argument is not persuasive. While the upper and lower arms of the chain-supported lugs, which make up the loops, contact and move both the product and the film, they are not in and of themselves separate conveyors. The district court failed to distinguish between two separate conveyors and a single conveyor with two moving surfaces going in the same direction. The claims define the former and cannot literally be literally read on the latter. On this basis alone, there can be no literal infringement because Keip's device lacks a second conveyor.

Having fully considered the remaining arguments of both parties we find it unnecessary to address them in light of the above conclusions.

### CONCLUSION

Contrary to the district court's opinion, the record does not support its claim interpretation or its finding of literal infringement. Accordingly, as to the judgment granting Lantech's motion for summary judgment of literal infringement, we reverse.

5. As defined in the American Heritage Dictionary of the English Language (1981).

As to the judgment denying Keip's motion for summary judgment of non-infringement, to the extent we find no literal infringement, we reverse.

We remand for further proceedings regarding infringement by application of the doctrine of equivalents, asserted by plaintiff but not decided by the district court.

REVERSE; REVERSE–IN–PART, AND REMAND.

Each party is to bear their own costs.